**Ex parte Timothy C. CASEY, Relator.**

**No. 14–96–01258–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 30, 1997.

Mary E. Van Orman, Houston, for relator.

Leta Womak, Houston, for respondent.

Before LEE, AMIDEI and EDELMAN, JJ.

## OPINION

AMIDEI, Justice.

In this original proceeding, relator, Timothy C. Casey, seeks a writ of habeas corpus on the ground that the September 24, 1996 order holding relator in contempt and ordering commitment is void. Relator contends the order is void because it holds relator in contempt for violating a portion of an order the trial court had no authority to enter. We grant the writ.

Relator filed a petition for divorce on August 30, 1995. On September 1, 1995, a new statute allowing spousal maintenance became effective. Real party in interest, Elonic Casey, contends she was not served and had no notice of relator's suit until after the effective date of the new statute. On October 20, 1996, real party in interest filed a counterpetition for divorce, seeking spousal maintenance. Relator filed a motion for partial summary judgment contending real party in interest could not recover spousal maintenance because the suit was filed before the effective date of the statute providing for such maintenance. The trial court denied this motion.

The trial court subsequently granted a final decree of divorce requiring relator to pay spousal maintenance. Relator did not make these payments and real party in interest filed a motion for enforcement. Relator filed a plea in bar to the motion for contempt, arguing again that the court had no power to award post-divorce alimony in an action initiated before September 1, 1995. The trial court denied this plea, found relator in contempt, and ordered him confined to the Harris County Jail for 90 days and thereafter until he paid $2,000.00 in spousal maintenance.

Relator then filed this proceeding. Relator argues the September 24, 1996 order is void because it holds relator in contempt for violating provisions in the divorce decree which the court was without power to enter. Relator claims the court had no power to award spousal maintenance because the divorce proceeding was initiated before the effective date of the statute authorizing spousal maintenance. Alternatively, relator contends the award of spousal maintenance requires him to pay in excess of 20% of his gross wages.

The purpose of a writ of habeas corpus is not to determine the guilt of the contemnor, but only to determine whether he was afforded due process of law or if the order of contempt was void. *Ex parte Gordon,* 584 S.W.2d 686, 688 (Tex.1979). A court will issue a writ of habeas corpus if the order underlying the contempt is void, *Ex parte Shaffer,* 649 S.W.2d 300, 302 (Tex.1983), or if the contempt order itself is void. *Gordon,* 584 S.W.2d at 688. An order is void if it is beyond the power of the court to enter it, or if it deprives the relator of liberty without due process of law. *Ex parte Friedman,* 808 S.W.2d 166, 168 (Tex.App.—El Paso 1991, orig. proceeding).

Until 1995, the award of post-divorce alimony or spousal maintenance was impermissible under the statutes and public policy of Texas. *See, e.g., Reed v. Reed,* 813 S.W.2d 716, 718 (Tex.App.—El Paso 1991, no writ). Effective September 1, 1995, statutory provisions authorized the award of post-divorce spousal maintenance under limited circumstances.[1] TEX. FAM.CODE ANN. § 3.9601

---

1. A spouse is eligible for maintenance under this     statute only under the following circumstances:

(Vernon Supp.1997). Because no statutory or other basis existed for award of spousal maintenance before September 1, 1995, relator argues the trial court had no authority to award spousal maintenance or to hold him in contempt for nonpayment of spousal maintenance.

The 1995 Act contained a transition provision explaining to which actions this act applied:

(a) Except as provided by Subsection (b) of this section, Sections 10.01 and 10.02[2] of this article take effect September 1, 1995, and apply only to an action filed on or after that date.

(b) Section 10.02 of this article does not apply to an action filed on or before January 1, 1997, if a prior suit for dissolution of a marriage between the parties was nonsuited by the spouse seeking maintenance on or after January 1, 1995, and on or before August 31, 1995.

(c) An action to which Section 10.02 of this article does not apply is governed by the law in effect at the time the action was filed, and that law is continued in effect only for that purpose.

Act of June 13, 1995, 74th Leg., R.S., ch. 655, § 10.03, 1995 Tex. Gen. Laws 3577. This section indicates the spousal maintenance provisions are applicable only to new suits filed on or after September 1, 1995.

Real party in interest contends the trial court had authority to apply the new statute because she filed her counterpetition after the effective date of the statute. Although real party in interest concedes there is no Texas authority for her position, she cites a New York case finding no abuse of discretion where a trial court allowed a party to dismiss a counterclaim and file a new suit for divorce so that the party could benefit from a statute that became effective after commencement of the original suit. *Motler v. Motler,* 60 N.Y.2d 244, 457 N.E.2d 691, 692–93, 469 N.Y.S.2d 586 (N.Y 1983). Real party in interest admits that New York law holds all counterclaims permissive, which may be filed as independent causes. Texas law is contrary to New York in this regard. *See* Tex.R. Civ. P. 97. Therefore, we find *Motler* inapplicable to the instant case. Nevertheless, real party in interest argues we should apply *Motler* merely because it avoids injustice.[3]

■ As real party in interest has conceded, no Texas authority permits application of a new statute where the original suit was filed before the effective date of the statute. Texas authority does offer guidance in construing code sections. For example, words

---

(1) the spouse from whom maintenance is sought was convicted of, or received deferred adjudication for, a criminal offense also constituting an act of family violence and the offense occurred during pendency of the suit for divorce or within two years before suit was filed; or (2) the marriage lasted ten years or longer, the spouse seeking maintenance lacks sufficient property to provide for his or her reasonable needs and is unable to support himself or herself through appropriate employment due to (a) physical or mental disability, (b) caring for a child with mental or physical disability where the needs of the child preclude employment outside the home, or (c) lack of earning ability in the labor market adequate to provide for the spouse's minimum reasonable needs. Tex. Fam. Code Ann. § 3.9602 (Vernon Supp.1997).

2. Section 10.01 concerned the purpose of the enactment of the statute and 10.02 constitutes the new statutes contained in sections 3.9601–3.9611. Act of June 13, 1995, 74th Leg., R.S., ch. 655, §§ 10.01–10.02, 1995 Tex. Gen. Laws 3577 (codified at Tex. Fam.Code Ann. §§ 3.9601–3.9611 (Vernon Supp.1977)).

3. Real party in interest also finds support for her position in the transition language of other Texas statutes. For example, real party in interest claims Tex. Civ. Prac. & Rem.Code Ann. § 33.012 prohibits application of the new statute "[i]f all or any part of a suit is filed before the effective date" of the act. Because the legislature did not include the "or any part of a suit" language in the new spousal maintenance act, real party in interest reasons they left the door open for application of the new law to counterclaims filed after the effective date.

We disagree, not only because the additional language would not change our ruling in this case, but also because the language to which real party cites is no longer effective. The statute to which real party in interest cites was amended in 1995 by an act that states it applies to "all causes of action that accrue on or after [September 1, 1995]." Act of May 18, 1995, 74th Leg., R.S., ch. 136, § 3, 1995 Tex. Gen. Laws 976. Thus, the applicability language for Tex. Civ. Prac. & Rem.Code Ann. § 33.012 is now exactly the same as that in the statute before us.

and phrases in code sections are to be construed according to their common usage. TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 1988). In construing code sections, we are further instructed to presume the legislature intended a just and reasonable result and that public interest is favored over any private interest. TEX. GOV'T CODE ANN. § 311.021 (Vernon 1988). We must strictly construe a statutory cause of action and all of the elements of the cause of action. *Esparza v. Nolan Wells Communications, Inc.,* 653 S.W.2d 532 (Tex.App.—Austin 1983, no writ); *Mingus v. Wadley,* 115 Tex. 551, 285 S.W. 1084 (1926).

Although real party in interest filed her counterpetition after the effective date of the statute, it would be unreasonable and confusing to future litigants to allow a party to force application of an otherwise inapplicable statute by filing a counterpetition after the effective date of that statute. It may seem unjust to allow relator to file his petition two days before the effective date of the statute with the alleged intention of depriving real party in interest the benefits of the new spousal maintenance statute, but we must not let the search for justice blind us to the obvious intent of the legislature. Upholding the trial court's interpretation of the transition provision of the statute would sanction an unreasonable interpretation of the plain language that the statute applies only to "actions filed on of after September 1, 1995." This language can only mean that it applies to cases where the original petition was filed on or after September 1, 1995. *Cf. Young v. Young,* 61 Md.App. 103, 484 A.2d 1054, 1057 (Md.Ct.Spec.App.1984) (holding that trial court erred in applying new law to modify and terminate alimony where statutory basis for modification and termination was not in effect at time divorce decree was entered and where new law stated it applied only to "cases filed" after the effective date). Upholding the trial court's interpretation would allow an otherwise inapplicable statute to apply where a counterpetition or counterclaim was filed after the effective date of the statute. Besides this could create confusion for litigants and the courts in the construction of this and similar statutory provisions. Therefore, we hold, as a matter of law, the trial court incorrectly interpreted the transition provision to find the spousal maintenance sections applicable to the case at bar.

Because the divorce proceeding was filed before the effective date of the section 3.9601, there was no statutory or other authority supporting the trial court's award of spousal maintenance. *Cf. Granite Constr. Co. v. Mendoza,* 816 S.W.2d 756, 766 (Tex. App.—Dallas 1991, writ denied) (holding party not entitled to recover prejudgment interest where statute authorizing prejudgment interest became effective after suit was filed). Consequently, we hold the trial court was without authority to award spousal maintenance in this case. Because the trial court had no authority to award spousal maintenance, the provisions of the divorce decree awarding spousal maintenance are void. Likewise, the September 24, 1996 order holding relator in contempt for refusing to comply with these spousal maintenance provisions is also void. *See Ex parte Shaffer,* 649 S.W.2d 300, 301–302 (Tex.1983).

In her final argument, real party in interest contends relator's complaint is appealable and, therefore, he is not entitled to relief by writ of habeas corpus. We disagree. Although relator may appeal the divorce decree, there is no authority for appealing an order of contempt. *Cine–Matics, Inc. v. State,* 578 S.W.2d 530, 531 (Tex.Civ. App.—Austin 1979, no pet.). Instead, the only method for review of a contempt proceeding is by habeas corpus. *Id.* Because the trial court had no authority to award spousal maintenance in an action initiated before the effective date of the statute, the trial court had no power to enforce the award by contempt and the order of contempt and commitment is void. *See Ex parte Barnett,* 600 S.W.2d 252, 254 (Tex.1980).

We grant the writ of habeas corpus, order relator released from bond, and order relator discharged from any restraint imposed on his liberty by the September 24, 1996 order.